## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

CHERYL GIARDINA

     Plaintiff,

v.                                         Case No. 25-2212

                                            **Jury Demanded**

DOLLAR TREE STORES, INC.

     Defendant,

## <u>VERIFIED COMPLAINT</u>

Plaintiff alleges as follows:

## I. INTRODUCTION

1.    This case arises from Defendant's systematic violations of the Americans with Disabilities Act that directly created the hazardous conditions causing Plaintiff's serious fall and denying her equal access to public accommodations. Defendant improperly designed and positioned downspouts violate ADA Standards by directing water onto accessible routes and parking areas, creating recurring slip hazards that particularly endanger customers with disabilities like Plaintiff.

2.    These ADA violations are not separate from the premises liability—they are the root cause of the dangerous conditions. Defendant's failure to maintain accessible features in compliance with 28 C.F.R. § 36.211(a) and 2010 ADA Standards §§ 403.5.1 and 206.2.1 systematically creates water accumulation on walkways, transforming what should be safe accessible routes into recurring slip hazards.

3.    Plaintiff brings claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189, the Louisiana Human Rights Act, La. Rev. Stat. § 51:2247, Louisiana Civil Code provisions, and related statutes, seeking substantial monetary damages and comprehensive injunctive relief to remedy Defendant's deliberate indifference to disability access rights.

4.    Defendant's conduct represents exactly the type of systematic indifference to disability rights that the ADA was designed to eliminate. This is not a case about weather or maintenance—it is about architectural discrimination that has persisted for years, endangering disabled customers daily while Defendant prioritized cost savings over civil rights compliance. Only comprehensive injunctive relief and substantial damages can remedy this pattern of deliberate indifference and ensure that other disabled customers do not suffer similar harm.

## II. JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 12188(a). Supplemental jurisdiction exists under 28 U.S.C. § 1367(a).

6.    Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendant operates the subject premises within this District, and all events giving rise to Plaintiff's claims occurred here. Because the hazardous and inaccessible conditions remain ongoing, making injunctive relief essential, this District is the proper forum for resolution.

## III. PARTIES

7.    Plaintiff, Cheryl Giardina, is an adult resident of Louisiana and a qualified individual with a disability under 42 U.S.C. § 12102(1). As a person with a disability protected under federal and state civil rights statutes, including the Americans with Disabilities Act and Louisiana Human Rights Act, Plaintiff is entitled to full and equal access to public accommodations free from discrimination and architectural barriers. In 2004, Plaintiff suffered a motor vehicle accident that crushed her L1 vertebrae, resulting in surgical hardware installation in her lumbar spine. She is partially paralyzed from the waist down, lacks sensation in affected areas, and her mobility impairment substantially limits major life activities including walking, standing, and bending. Her balance and mobility are significantly affected by her spinal

hardware, making slip hazards particularly dangerous and accessible routes essential for her safety, not just convenience.

8.     Defendant, Dollar Tree Stores, Inc., is a Virginia corporation with its principal place of business at 500 Volvo Parkway, Chesapeake, Virginia 23320. Defendant owns, operates, manages, and controls the retail store located at 5001 Lapalco Boulevard, Marrero, Louisiana 70072, which is a place of public accommodation under 42 U.S.C. § 12181(7)(E).

## IV. FACTUAL ALLEGATIONS
### A. Plaintiff's Pre-Existing Disability and Heightened Vulnerability

9.     Plaintiff's 2004 L1 vertebrae crush injury has left her with permanent disabilities that make her particularly vulnerable to slip hazards. Her surgical hardware in the lumbar spine affects her balance and mobility, while her partial paralysis and lack of sensation in affected areas make it difficult to detect and react to hazardous conditions. For Plaintiff and others with similar mobility impairments, accessible routes are not merely convenient—they are essential for safety.

10.     Due to Plaintiff's mobility impairment and spinal hardware, she cannot quickly adjust her gait or balance when encountering unexpected hazards. Her partial paralysis and lack of sensation in affected areas prevent her from detecting surface changes through tactile feedback that non-disabled individuals rely upon. The water accumulation from Defendant's drainage violations combined with inadequate lighting created precisely the type of unpredictable surface conditions that pose exponentially heightened danger to individuals with her specific mobility impairments.

10.     Plaintiff's pre-existing condition creates a heightened vulnerability that Defendant was required to consider under the ADA. The surgical hardware and spinal injuries mean that any additional trauma to her back and spine carries exponentially greater risks of permanent

complications, limited treatment options, and cascading disabilities that would not affect non-disabled individuals.

Plaintiff's surgical hardware creates contraindications for standard diagnostic procedures, requiring specialized medical protocols as evidenced by her treating physician's notation that radiologists must determine safe imaging procedures due to "surgical hardware in lumbar spine, unsure type of metal." This hardware limitation has complicated her post-incident medical treatment and diagnosis.

### B. ADA Violations That Created the Hazard

11. Defendant's improper drainage design and downspout placement violates 2010 ADA Standards § 403.5.1 by creating hazardous water accumulation that makes accessible routes unstable, non-firm, and slip-resistant, thereby causing ongoing hazards that particularly endanger customers with disabilities.

12. Photos A.1, A.2, and A.3 below depict Images of improperly placed downspouts directing water onto accessible walkways and parking areas which contributes to the recurring drainage problems and violations as well as the water accumulation that creates slip hazards for disabled customers.



**Photo A.1**

 

**Photo A.2**                              **Photo A.3**

13.    Defendant failed to provide accessible routes from parking to entrances in violation of 2010 ADA Standards § 206.2.1.

14.    The downspout placement and resulting water discharge creates architectural barriers that deny full and equal enjoyment in violation of 28 C.F.R. § 36.201(a) (general prohibition against discrimination).

15.    Defendant failed to maintain accessible features in violation of 28 C.F.R. § 36.211(a), which requires public accommodations to maintain accessible features in operable working condition.

Defendant failed to make reasonable modifications in policies, practices, or procedures in violation of 28 C.F.R. § 36.302.

16.    The complete absence of any drainage system at Defendant's Marrero store directly violates ADA accessibility requirements. There is no drain—the downspouts simply direct water towards the sidewalk and accessible routes where persons with disabilities must travel to enter

the store. This lack of drainage systematically creates water accumulation and active water flow across accessible parking areas and walkways in violation of 2010 ADA Standards § 403.5.1, which requires accessible routes to have stable, firm, and slip-resistant surfaces. The absence of proper drainage transforms federally-required accessible routes into hazardous barriers that disproportionately impact customers with mobility impairments, wheelchairs, and assistive devices.

17.    Photo B below depicts the lack of drainage combined with the improper placement of downspouts and overgrown vegetation at Defendant's Marrero store. As shown in the photograph, there is no drainage system whatsoever—the downspouts are positioned to direct water toward the sidewalk and accessible routes, pouring water directly across grass areas that are overgrown with vegetation. The overgrown vegetation obstructs proper water dispersal and channels water unpredictably onto the sidewalk and accessible routes where persons with disabilities must travel to enter the store. The photograph demonstrates how the absence of any drainage infrastructure, combined with negligent downspout placement and unmanaged vegetation, creates hazardous water flow patterns that continuously threaten the safety of customers, particularly those with mobility impairments who require stable, predictable surfaces for safe navigation.



Photo B

18.    In addition to the drainage violations, Defendant failed to provide adequate lighting in the parking lot, walkways, and entrance areas, creating unsafe conditions that violate ADA maintenance requirements under 28 C.F.R. § 36.211(a). Poor lighting exacerbates slip hazards and prevents persons with disabilities from safely detecting water accumulation, pooling, and other hazardous conditions on accessible routes. Adequate lighting is essential for accessible route compliance as poor lighting creates additional architectural barriers that deny persons with disabilities full and equal access.

19.    Photos C.1 and C.2 below depict the inadequate lighting conditions at Defendant's Marrero store, showing insufficient illumination of accessible routes, parking areas, and entrances that compounds the slip hazards and creates additional barriers for persons with disabilities. As shown in the photographs, there is only a single light fixture positioned above the entrance door, with no lighting whatsoever along the sidewalk or in close proximity to the handicapped parking area. This inadequate or complete lack of lighting violates ADA maintenance requirements under 28 C.F.R. § 36.211(a) and creates dangerous conditions where customers with disabilities cannot safely detect water accumulation, hazardous surfaces, and other obstacles essential for. safe navigation of accessible routes.



**Photo C.1**



**Photo C.2**

21. The inadequate lighting conditions particularly impacted Plaintiff's ability to safely navigate the premises due to her disability. Individuals with spinal hardware and mobility impairments require enhanced visual detection of surface hazards because they cannot rely on normal proprioceptive feedback and quick reflexive responses. The single light fixture at the entrance and complete absence of lighting near handicapped parking created dangerous shadows and visibility gaps that prevented Plaintiff from identifying the water accumulation that caused her fall.

20.   Beyond the drainage hazards and lighting, the payment counter inside the Marrero store exceeds the maximum height allowed under the 2010 ADA Standards for Accessible Design § 904.4.1, which requires at least one sales counter to be no higher than 36 inches above the finished floor. This structural barrier denies Plaintiff and other customers with mobility impairments full and equal access to point-of-sale services.

19.   Photo D below depicts the non-compliant payment counter, showing the excessive height that prevents wheelchair users and customers with mobility impairments from accessing point-of-sale services.



**Photo D**

## C. Hazardous Conditions Created by ADA Violations

20.    Water from the store's roof discharges through negligently designed and positioned downspouts directly onto pedestrian walkways, including accessible parking areas and routes. This dangerous condition occurs during any moderate rainfall and represents a foreseeable, recurring hazard that Defendant has ignored for years.

21.    Defendant's improper drainage system, including negligently positioned downspouts that direct water onto pedestrian walkways rather than proper drainage areas, creates recurring hazardous conditions that pose foreseeable dangers to all customers, particularly those with mobility impairments who cannot easily detect or avoid slip hazards.

22.    The lack of drainage combined with the improper placement of downspouts at Defendant's Marrero store creates a persistent and dangerous hazard that violates basic safety standards for public accommodations. There is no drain—the downspouts are positioned to direct water towards the sidewalk and accessible routes, pouring water directly across the grass where it flows continuously onto the sidewalk where persons with disabilities must enter the store. In addition to the absence of proper drainage, the flow area is overgrown with vegetation, which

further obstructs proper water dispersal and exacerbates the hazardous conditions by channeling water unpredictably across accessible routes.

23.    The discharged water consistently creates unsafe, slippery conditions on walkways, particularly affecting accessible parking spaces and accessible routes required for persons with disabilities. These surfaces become hazardous during any precipitation, with no slip-prevention measures in place.

24.    Despite knowing of this multi-year pattern of dangerous conditions, Defendant failed to:

a. Install proper drainage or redirect downspouts away from pedestrian areas;

b. Post warnings, signage, or barriers alerting customers to the hazard;

c. Place mats, cones, or absorbent materials to mitigate slipperiness;

d. Train employees to identify and address the hazardous condition; or

e. Implement corporate policies for regular exterior drainage inspections.

25.    The inadequate lighting conditions at Defendant's premises compound the slip hazards created by water accumulation. With only a single light fixture at the entrance and no lighting whatsoever at the handicapped parking area, customers with disabilities cannot adequately identify hazardous conditions, particularly during reduced daylight hours when the incident occurred at 1:30 p.m. during winter conditions.

**D. Long-Standing Nature of ADA Violations**

25.    Upon information and belief, the hazardous drainage conditions at Defendant's Marrero store have existed for multiple years, creating recurring slip hazards during every rainfall event since the store's construction or renovation. The downspout placement and inadequate drainage design represent permanent structural defects that have posed ongoing dangers to customers with disabilities, not temporary weather-related conditions.

26.    The persistent and recurring nature of this hazard means Defendant has had hundreds of opportunities during routine business operations to observe, document, and correct the dangerous condition. Despite this, no corrective measures were implemented.

27.    The multi-year persistence of these hazardous conditions demonstrates Defendant's systematic failure to prioritize accessibility compliance and customer safety in its operational policies.

**E. The Incident and Aggravation of Pre-Existing Condition**

28.    On January 24, 2025, at approximately 1:30 p.m., Plaintiff visited Defendant's Marrero store as a business invitee, attempting to access goods and services offered to the general public.

29.    Three days earlier, Louisiana experienced historic snowfall and ice storms. By January 24, 2025, most snow had melted, creating widespread runoff conditions.

30.    Defendant maintained its store open for business, representing to the public— including persons with disabilities—that its premises were safe and accessible.

31.    As Plaintiff approached the store entrance, she encountered significant water accumulation on the slippery walkway surface. Due to her disability, she was unable to safely navigate the hazardous conditions. She slipped and fell forcefully, sustaining severe injuries to her back, legs, and other parts of her body.

32.    But for Defendant's ADA violations creating water accumulation on accessible routes combined with inadequate lighting that prevented visual hazard detection, Plaintiff's disability-related limitations would not have resulted in her inability to safely navigate the premises. A person without Plaintiff's mobility impairment and spinal hardware could have more readily detected and avoided the hazard or recovered from a slip without the severe complications that resulted from her pre-existing spinal condition.

32.    The fall directly impacted Plaintiff's pre-existing L1 vertebrae condition and surgical hardware. Because of her 2004 spinal injury and the metal hardware in her lumbar spine, this fall created a cascading effect of complications that would not occur in non-disabled individuals. The trauma has aggravated her existing spinal condition and created new limitations on her already compromised mobility.

33.    Plaintiff's fall has created complex medical complications due to her pre-existing spinal hardware. As documented in her medical referrals, her "surgical hardware in lumbar spine" has created contraindications requiring specialized imaging protocols and radiologist consultation to determine safe diagnostic options. This hardware limitation has restricted her treatment options and complicated her recovery in ways that would not affect non-disabled individuals.

33.    A delivery driver witnessed Plaintiff's fall and assisted her. She was soaked, injured, and in severe pain.

34.    Plaintiff immediately reported the incident to store personnel, and a Dollar Tree employee documented the fall in an incident report, providing Defendant with actual notice of the hazardous conditions.

**F. State Statute Violations**

35.    Defendant's conduct violates La. R.S. § 40:1734 by creating and allowing obstructions to accessible walkways, entrances, and designated accessible parking spaces through water accumulation and inadequate drainage design.

36.    Defendant's improper drainage which causes hazardous conditions violates La. R.S. § 9:2800.6(B) by creating and maintaining an unreasonable risk of harm through systematically poor drainage design that defendant knew or should have known would cause slip hazards.

37.     These violations also breach Louisiana Accessibility Code provisions incorporating 2010 ADA Standards § 302 (floor and ground surfaces) and § 403.5 (accessible route requirements).

38.     Defendant violated La. Rev. Stat. § 51:2247(A) by denying Plaintiff full and equal enjoyment of goods, services, facilities, privileges, and advantages on the basis of disability.

39.     Defendant's conduct violates La. R.S. § 9:2800.6(B) by failing to exercise reasonable care to prevent injury despite knowing or having reason to know of the unreasonable risk of harm.

40.     The violations constitute negligence under La. Civ. Code art. 2317.1 regarding custody of things causing damage.

**G. Corporate Knowledge and Notice**

41.     Defendant had actual notice of these hazardous conditions because Defendant created and maintained the hazard through its deliberate design and placement of downspouts directing water onto accessible walkways and parking areas.

42.     The hazardous conditions were visible and obvious during regular business hours for extended periods, providing Defendant with repeated opportunities to observe and remedy the violations through routine maintenance and ADA compliance inspections required by law. The lighting deficiency was particularly obvious as it affected customer safety during all evening hours and reduced daylight conditions.

42.     Defendant's corporate risk management systems should have identified this location as a recurring liability exposure through claims data, incident reports, and routine safety audits conducted over multiple years. Yet Defendant failed to act on this information.

43.    Discovery will reveal that Defendant has received multiple customer complaints, incident reports, and employee observations regarding water accumulation at the store entrance and accessible parking areas over a period of years.

44.    Industry standards require retail establishments to conduct periodic exterior drainage assessments, particularly for locations serving disabled customers, yet Defendant failed to implement such protocols despite years of opportunity.

45.    Defendant lacks adequate corporate policies for identifying, documenting, and correcting long-term accessibility hazards at its retail locations. Despite having corporate knowledge of this location's recurring drainage problems for years, Defendant failed to allocate resources for permanent remediation, prioritizing short-term cost savings over customer safety and ADA compliance.

46.    Defendant's continued operation of the store with known, long-standing accessibility barriers shows deliberate indifference to the safety of disabled patrons and willful disregard of federal accessibility requirements.

**H. Continuing Violations**

47.    Defendant's ongoing failure to remediate these accessibility and safety violations constitutes a continuing violation under 42 U.S.C. § 12188, making injunctive relief particularly appropriate. Each day the hazardous conditions persist represents a fresh violation of the ADA's accessibility requirements.

48.    Upon information and belief, discovery will reveal that Defendant's corporate risk management has documented similar drainage and accessibility violations at other Dollar Tree locations, evidencing a pattern of deliberate indifference to ADA compliance.

49.    Defendant's systematic failure to maintain accessible features disproportionately impacts customers with mobility impairments like Plaintiff. While non-disabled customers might navigate around water accumulation or recover from minor slips, customers with spinal hardware, balance limitations, and reduced tactile sensation face exponentially greater risks from these same conditions. The combination of drainage failures and lighting deficiencies created compounding accessibility barriers that specifically targeted the most vulnerable aspects of Plaintiff's disability.

49.    As of the filing of this complaint, the hazardous drainage conditions at Defendant's Marrero store remain uncorrected, continuing to pose daily risks to customers with disabilities and violating federal accessibility requirements with each business day that passes.

50.    Upon information and belief, Defendant's corporate policies fail to require adequate ADA compliance training, accessibility audits, or hazard remediation protocols, evidencing deliberate indifference to disability rights and creating a pattern of systemic discrimination against persons with disabilities.

**I. Pattern of Disability Discrimination**

51.    Defendant's violations demonstrate a pattern of architectural discrimination that systematically excludes customers with disabilities. The concurrent failures of drainage, lighting, and interior accessibility (elevated counters) show deliberate indifference to federal accessibility requirements rather than isolated maintenance issues.

52.    This pattern of discrimination creates cumulative barriers that deny persons with disabilities full and equal access while non-disabled customers can access the premises without encountering the same hazards and obstacles.

**V. CLAIMS FOR RELIEF**

**Count I: Disability Discrimination (ADA, 42 U.S.C. § 12182)**

50.    Plaintiff incorporates all preceding paragraphs.

51.    Defendant operates a public accommodation subject to Title III of the ADA.

52.    Defendant violated 42 U.S.C. § 12182(a) by discriminating against Plaintiff on the basis of her disability through:

    a. Failing to maintain accessible features in violation of 28 C.F.R. § 36.211(a) (maintenance of accessible features);

    b. Creating and maintaining architectural barriers that deny full and equal enjoyment in violation of 28 C.F.R. § 36.201(a) (general prohibition against discrimination);

    c. Failing to make reasonable modifications under 28 C.F.R. § 36.302 (reasonable modifications in policies, practices, or procedures);

    d. Violating 2010 ADA Standards § 302.1 (slip-resistant surfaces) and § 206.2.1 (accessible routes);

    e. The complete absence of drainage infrastructure combined with improperly positioned downspouts that direct water from the roof directly across accessible routes and accessible parking areas constitutes a systematic architectural barrier that denies persons with disabilities full and equal access in violation of 42 U.S.C. § 12182(a);

    f. Violating the 2010 ADA Standards for Accessible Design § 904.4.1, which requires at least one sales counter to be no higher than 36 inches above the finished floor. This structural barrier denies Plaintiff and other customers with mobility impairments full and equal access to point-of-sale services.

g. Defendant's systematic failure to maintain accessible features under 28 C.F.R. § 36.211(a) is evidenced by both the absence of proper drainage and the overgrown vegetation that compounds water flow problems, demonstrating a pattern of neglect that multiplies the hazards faced by persons with disabilities.

53. The hazardous conditions specifically impacted Plaintiff's protected class by creating barriers that non-disabled customers could more easily avoid or navigate, while Plaintiff's mobility impairment and spinal hardware made her particularly vulnerable to the slip hazard, thereby creating a disparate impact on disabled customers in violation of 42 U.S.C. § 12182(b)(2)(A)(i).

54. Defendant's ongoing failure to remediate these accessibility violations constitutes a continuing violation under 42 U.S.C. § 12188.

**Count II: Disability Discrimination (La. Rev. Stat. § 51:2247)**

55. Plaintiff incorporates all preceding paragraphs.

56. Defendant violated La. Rev. Stat. § 51:2247(A) by denying Plaintiff full and equal enjoyment of goods, services, facilities, privileges, and advantages on the basis of disability.

57. Defendant's indifference to repeated accessibility failures constitutes intentional discrimination under La. R.S. § 51:2247(B).

**Count III: Obstruction of Access (La. R.S. § 40:1734)**

58. Plaintiff incorporates all preceding paragraphs.

59. Defendant violated La. R.S. § 40:1734 by creating and allowing obstructions to accessible walkways, entrances, and designated accessible parking spaces through water accumulation and inadequate drainage design.

60.    These violations also breach Louisiana Accessibility Code provisions incorporating 2010 ADA Standards § 302 (floor and ground surfaces) and § 206.2.1 (accessible route requirements).

**Count IV: Negligence (La. Civ. Code art. 2317.1; La. R.S. § 9:2800.6)**

61.  Plaintiff incorporates all preceding paragraphs.

62.  Defendant owed Plaintiff a duty to maintain the premises in a reasonably safe condition and warn of hazards.

63.  Defendant breached its duty by:

   a. Failing to properly design, install, and maintain drainage systems;

   b. Failing to inspect and correct known recurring hazards in violation of La. R.S. §9:2800.6(B);

   c. Failing to provide adequate lighting in parking areas, walkways, and entrance areas, violating ADA maintenance requirements under 28 C.F.R. § 36.211(a) and creating dangerous conditions where customers with disabilities cannot safely detect hazards on accessible routes;

   d. Failing to comply with 28 C.F.R. § 36.211(a) (maintenance of accessible features);

   e. Violating 2010 ADA Standards § 403.5.1 and § 302 constituting negligence per se;

   f. Violating National Floor Safety Institute (NFSI) standards requiring coefficient of friction testing for walkway surfaces and immediate remediation of slip hazards in retail environments.

64.    Defendant's conscious disregard for accessibility requirements, despite corporate knowledge of recurring hazards and multiple opportunities to remediate, demonstrates the willful and wanton conduct warranting punitive damages under Louisiana law.

65.    Defendant's breaches directly and proximately caused Plaintiff's injuries and damages.

## V. DAMAGES

All damages listed below are the direct and proximate result of Defendant's ADA violations and premises liability negligence. But for Defendant's systematic failure to maintain accessible premises, Plaintiff would not have encountered the hazardous conditions that directly caused her fall and injuries.

### A. Medical Expenses and Special Damages

66.    As a direct result of Defendant's negligence and violations, Plaintiff has incurred substantial documented medical expenses, including not limited to:

a. Emergency room treatment at West Jefferson Medical Center.

b. Ongoing chiropractic care at Westbank Prime Physicians;

c. Multiple diagnostic imaging including lumbar spine X-rays, thoracic spine X-rays, bilateral shoulder X-rays, and hand X-rays;

d. Ongoing therapeutic treatments including spinal manipulation, thermotherapy, cryotherapy, and mechanical traction;

e. Future medical expenses for continued treatment and specialized evaluations.

67.    Plaintiff's fall has created complex medical complications due to her pre-existing spinal hardware from her 2004 L1 vertebrae crush injury. Her surgical hardware in the lumbar spine has created contraindications for standard MRI procedures, requiring specialized imaging protocols and radiologist consultation to determine safe diagnostic options.

67.    The fall has necessitated ongoing medical monitoring and evaluation by multiple specialists to assess the impact on her pre-existing spinal condition and determine appropriate treatment protocols that account for her surgical hardware limitations.

**B. Physical Pain and Suffering**

68.    Plaintiff has endured and continues to endure severe physical pain and suffering, including:

> a. Acute pain immediately following the fall requiring emergency medical treatment, complicated by her pre-existing spinal hardware;

> b. Chronic ongoing pain in her back, legs, shoulders, and hands requiring continuous chiropractic intervention, with limited treatment options due to her surgical hardware;

> c. Exacerbation of her pre-existing spinal pain condition to levels significantly beyond her baseline disability;

> d. Sleep disruption and inability to find comfortable positioning due to increased pain levels affecting both her original injury site and new trauma areas;

> e. Physical limitations that prevent normal daily activities and movement.

> f. Other damages will be proven at trial.

**C. Mental Anguish and Emotional Distress**

69.    As a direct result of this incident, Plaintiff has suffered and continues to suffer significant mental anguish and emotional distress, including:

> a. Fear and anxiety about accessing public accommodations due to concern about encountering similar hazards, compounded by her awareness of her

increased vulnerability;

b. Loss of confidence in her ability to navigate public spaces safely despite her existing mobility challenges;

c. Emotional distress related to the regression of her functional independence and fear of further disability progression;

d. Anxiety regarding her long-term prognosis and potential for further complications given her pre-existing hardware and spinal condition;

e. Frustration and humiliation from the incident and its impact on her dignity and autonomy.

f. Other damages will be proven at trial.

**D. Loss of Enjoyment of Life and Life Disruption**

70.    The incident has substantially disrupted Plaintiff's quality of life and enjoyment of daily activities:

a. Inability to engage in activities she previously enjoyed due to increased pain and mobility limitations;

b. Restriction of social activities and community participation due to fear of encountering similar accessibility barriers;

c. Disruption of her established routines and independence in shopping and accessing goods and services;

d. Reduced ability to participate in family activities and social gatherings;

e. Overall diminishment in her quality of life and personal satisfaction.

f. Other damages will be proven at trial.

**E. Aggravation of Pre-Existing Disability and Cascading Effects**

71.    Plaintiff's fall has compounded her pre-existing mobility impairments, making her even more vulnerable to future accessibility barriers and reducing her independence in accessing public accommodations. The incident has created a cascading effect where her 2004 spinal injury limitations are now magnified by additional trauma, requiring specialized medical protocols and restricting her treatment options due to her surgical hardware. Her medical providers must now determine safe diagnostic procedures due to "surgical hardware in lumbar spine, unsure type of metal," creating treatment complications that non-disabled individuals would not face

72.    The aggravation of her L1 vertebrae condition has increased her risk of future complications, mobility deterioration, and long-term disability progression, requiring specialized ongoing medical care and monitoring.

73.    Plaintiff continues to suffer from increased risk of future falls due to her worsened condition, requiring heightened vigilance and assistance that she did not need prior to this incident.

**F. Loss of Independence and Increased Dependence**

74.    The incident has necessitated significant modifications to Plaintiff's daily routines and lifestyle, representing a regression from the level of independence she had achieved despite her 2004 injury:

a. Increased dependence on others for assistance with activities she previously performed independently despite her pre-existing disability;

b. Requirement for accompaniment or assistance when accessing retail establishments and public accommodations due to both her original condition and new limitations;

c. Avoidance of certain retail locations and public spaces due to accessibility

concerns and increased fall risk;

d. Need for additional assistive devices or modifications to accommodate her

worsened condition.

**G. Loss of Household Services**

75.    Due to her increased pain and reduced functional capacity, Plaintiff has lost the

ability to perform household services and domestic activities that she previously accomplished

independently, requiring her to seek assistance or hire help for tasks including but not limited to

cleaning, shopping, maintenance, and other household duties.

**H. Future Medical Expenses and Specialized Care Needs**

76.    Plaintiff will require ongoing and future medical care as a direct result of this

incident, complicated by her pre-existing surgical hardware:

a. Continued chiropractic and rehabilitative care for an indefinite period;

b. Specialized diagnostic imaging requiring protocols adapted for her surgical

hardware;

c. Potential orthopedic and neurological consultations to monitor the interaction

between her fall injuries and pre-existing spinal condition;

d. Possible surgical intervention if her condition deteriorates further;

e. Physical therapy and adaptive equipment as her condition requires;

f. Long-term monitoring for complications related to the interaction between her

fall injuries and pre-existing spinal hardware.

**I. Loss of Earning Capacity and Wages**

77.    As a direct result of the fall and its complications, Plaintiff has experienced

diminished earning capacity and ability to work, particularly given her pre-existing limitations

and the aggravation of her condition, resulting in lost wages and reduced future earning potential.

**J. Continuing and Future Damages**

78.    All of the above damages are ongoing and will continue into the future, as Plaintiff's condition represents a permanent aggravation of her pre-existing disability with long-term implications for her health, independence, and quality of life.

79.    The full extent of Plaintiff's future damages cannot be precisely calculated at this time but will be established through expert medical testimony and life care planning at trial.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

**A.  Declaratory and Injunctive Relief:**

1. Declare Defendant's conduct violates the ADA and Louisiana law;

2. Enter permanent injunction requiring Defendant to:

a. Correct all hazardous drainage conditions;

b. Redesign and redirect downspouts to drain away from accessible routes and sidewalks used by persons with disabilities, install proper drainage systems to prevent water accumulation on accessible routes, and maintain vegetation in flow areas to prevent obstruction of water dispersal;

c. Install slip-resistant surfaces;

d. Modify the payment counter to ADA-compliant height;

e. Implement written policies for accessibility maintenance and hazard response;

f. Provide employee training on ADA compliance;

g. proper lighting installation with ongoing maintenance requirements

h. Submit to periodic court-supervised accessibility audits with public reporting of compliance measures

**B. Monetary Relief:**

1. Award compensatory damages including:

   a. Past and future medical expenses;

   b. Past, present, and future pain and suffering,

   c. Enhanced pain and suffering by pre-existing condition complications;

   d. Mental anguish and emotional distress;

   e. Loss of enjoyment of life and independence regression;

   f. Specialized future medical care related to pre-existing condition aggravation;

   g. Loss of earning capacity and wages;

   h. Loss of household services;

   i. All other damages proven at trial;

   j. Award punitive damages for Defendant's willful, wanton, and reckless disregard for accessibility rights;

   k. Award reasonable attorney's fees, costs, and expert witness fees under 42 U.S.C. § 12205 and La. R.S. § 51:2264;

   l. Award pre-judgment and post-judgment interest;

   m. Grant such other relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ Marc J. Hoerner Jr.
**MARC J. HOERNER JR.**, Esq. (#37470)
**HOERNER LAW, LLC.**
2483 Burgundy St.
New Orleans, LA 70117
Telephone:(504) 388-6480
mhoerner@hoernerlawllc.com
*Attorney for Plaintiff*

## DECLARATION OF CHERYL GIARDINA

Pursuant to 28 U.S.C. 1746 and the laws of the United States of America, Cheryl

Giardina declares as follows:

1. I am the Plaintiff in this matter and have personal knowledge of the facts stated in the foregoing Complaint.

2. I have carefully reviewed the foregoing Complaint and its contents.

3. I have personal knowledge of most of the allegations in the complaint and declare them to be true and correct.

4. As for the allegations I lack personal knowledge about, I believe these allegations to be true and correct based on the best available evidence.

5. If called to testify, I would testify to the allegations in the complaint about which I have personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this **17th** day of **October 2025**

**CHERYL GIARDINA**
530 Francis St.
Marrero, LA 70072
(504) 669-7394

9